# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE CASTANEDA,<br><br>          Petitioner,<br><br>     v.<br><br><br>WARDEN KATHLEEN ALLISON,<br><br>          Respondent. | Case No. 1:10-cv-02042-BAM-HC<br><br>ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1)<br><br>ORDER DIRECTING THE ENTRY OF JUDGMENT FOR RESPONDENT<br><br>ORDER DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting their consent in writings signed by the parties or their representatives and filed by Petitioner on November 22, 2010, and on behalf of Respondent on February 28, 2011. Pending before the Court is the petition, which was filed on November 3, 2010.  Respondent filed an answer on June 17, 2011, and

1

Petitioner filed a traverse on July 18, 2011.

In the petition, Petitioner raised two claims, namely, 1) Petitioner's conviction of attempted murder violated his right to due process of law guaranteed by the Fourteenth Amendment because the evidence was insufficient to establish the requisite intent to kill (pet., doc. 1, 23-37), and 2) the trial court lacked statutory authority to impose a fifteen-year determinate sentencing enhancement pursuant to Pen. Code § 186.22(b)(4) for commission of the offense in furtherance of a criminal street gang's criminal conduct (id. at 38-41). By order dated January 31, 2011, Petitioner's sentencing claim was dismissed without leave to amend as a state law claim. Thus, the only issue raised in the petition is the sufficiency of the evidence to establish Petitioner's intent to kill.

## I. Jurisdiction

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. -, -, 131 S.Ct. 13, 16 (2010) (per curiam). Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered a violation of

his constitutional rights. Further, the challenged judgment was rendered by the Tulare County Superior Court (TCSC), which is located within the territorial jurisdiction of this Court. 28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).

Respondent filed an answer on behalf of Respondent Kathleen Allison, Warden of the California Substance Abuse Treatment Facility at Corcoran, California, where Petitioner has been incarcerated at all pertinent times during this proceeding. Petitioner has thus named as a respondent a person who has custody of the Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules). See, Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).

Accordingly, this Court has jurisdiction over the subject matter of this action and over the person of Respondent Allison.

II. Procedural Summary

Petitioner was convicted in the Superior Court of the State of California, County of Tulare, in case number VCF194024, of attempted premeditated murder in violation of Cal. Penal Code §§ 664 and 187(a) and assault with a deadly weapon in violation of Cal. Pen. Code § 245(a)(1). The jury further found true enhancements for committing the crimes for the benefit of a street gang in violation of Cal. Pen. Code § 186.22(b)(1) and personally inflicting great bodily injury in violation of Cal. Pen. Code § 12022.7(a). On June 25, 2008, Petitioner was sentenced to a term of life with the possibility of parole on the attempted murder plus a determinate term of eighteen years for the gang and great bodily injury enhancements. (Ans., doc. 15, Exh. 1 at 16.)

Petitioner appealed the judgment, and on October 1, 2009, in case number F055832, the Court of Appeal of the State of California, Fifth Appellate District (CCA) ordered the abstract of judgment amended but otherwise affirmed the judgment in a reasoned decision. (Doc. 16, 22-23.)

Petitioner filed a petition for review in the California Supreme Court (CSC), which summarily denied the petition in case number S177547 on December 17, 2009 without a statement of reasoning or authority. (LD 7.)[1]

On November 3, 2010, Petitioner filed the petition that is presently before the Court.

III.  Factual Summary

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness. 28 U.S.C. § 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004). This presumption applies to a statement of facts drawn from a state appellate court's decision. Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009). The following statement of facts is taken from the opinion of the CCA in People v. George Robert Castaneda, case number F055832, filed on October 1, 2009:

**FACTS**

> Around 8:30 p.m. on November 11, 2007, a car belonging to Carmen Contreras, parked outside the family home in Woodlake, California, was vandalized, with a car window broken and tire slashed. Jose Contreras was at home with

---

[1] "LD" refers to documents lodged by the Respondent in support of the answer.

4

his wife Carmen, son Rafael and daughter Carin. Jaime Ortiz Perez, who was living with the Contreras family while looking for a place to live, also was at the Contreras home that evening. Jose Contreras testified that he heard a "thump," went outside, and saw the damage to the car and three young men running off.

Rafael testified that he had just arrived home and had seen four people walking down the street. After he went inside the house, he heard a window break; he went back outside and saw a window of his mom's car was broken and a tire sliced. He also saw people running and heard someone yell "Norte" and "fucking scraps," which he believed was an insult to a southern gang member. Carmen told Rafael not to follow the men, and to just call the police. Rafael told his mother that by the time the police arrived, the vandals would already be gone and they did not know who the vandals were. Then, he picked up a golf putter from the front yard and gave chase.

The vandals ran to a house two blocks away. Jose got into his pickup and followed them to the yard of the house. "[W]hat I wanted was for them to be responsible for the damages that they caused. We've never done anything to them," Jose testified. "My intentions were to go speak with the parents at the house." Rafael and Perez followed on foot.

As Jose, Rafael and Perez arrived at the house, five more men came out of the house to join the men that were already outside. Jose testified that he noticed appellant with a knife. "[W]hen I saw the knife and I saw they were all trying to come towards me and I said, 'I don't want to fight, we don't want to fight.'"

Rafael testified that, after he, his father, and Perez pursued the vandals to the house two blocks away, his father asked two individuals in the yard why they had vandalized the car. One of those two individuals was appellant. Some seven more individuals exited the house and Perez began arguing with those gathered about the vandalism. Rafael said his dad told them that they should leave. Rafael saw that the other people were becoming mad, so he told Perez to stop and "let's go." Then, he saw that appellant had a knife. Rafael dropped the golf club, and Rafael and Perez began to run toward Jose's pickup truck. Rafael testified that "I think Jaime [Perez] was kind of

5

moving to the truck 'cause he was going to jump in, but I guess they got him before he got in the truck."

Jose said that he grabbed his son Rafael and pushed him into the truck, and "then they just all jumped on Jaime [Perez].... They started beating him." He estimated that eight people jumped on Perez; he saw appellant with a knife in his right hand. He testified: "I got on the truck, I turned the truck around, I threw the high beams on just to see them. But when I threw the high beams on, they ran, and that's when I saw the knife or the blade there on-in the right hand-in his right hand."

Rafael saw appellant stab Perez about nine times while Perez was "laying on his back, and he was kicking and trying to hit him away from him, and [appellant] was stabbing him." Others in the group kicked and hit Perez, but Rafael did not see anyone else in the group stab Perez.

One person in the group of attackers yelled, "If somebody calls the police, we're going to find your family." The attackers ran off, and Rafael got out of the truck, grabbed Perez and "picked him up, and that's when a lot of blood got on [his] shirt."

As the group drove off in the pickup truck towards the police department, they encountered a sheriff patrol car and an ambulance was called.

During the police investigation that immediately followed, the police found two separate areas of blood, a broken knife blade, and the head of a broken putter in the street. Inside the house, police found a bloody plaid shirt, broken knife handle, and broken golf club handle. Police officers did not notice injuries to any of the other participants in the assault on Perez.

Perez suffered "several lacerations on his left shoulder, one on the back of his neck, his torso, and ... the middle finger on each of his hands were also cut." He also sustained an abrasion to his hip. Some of the wounds were stapled shut. An officer attempted to interview Perez, but he was not cooperative. Perez did not testify at the trial.

6

When appellant was interviewed by police afterward, appellant repeatedly said that attempted murder "charges were too much and that he was gonna lose everything."

According to Woodlake police officer Juan Garcia, the department's gang officer, appellant is a Norteno gang member while Perez is a Sureno gang member, and Rafael is a Sureno gang member associate. The officer testified that the entire incident, from the vandalism to the stabbing, was gang related. He also outlined the Norteno-Sureno gang dispute, and described appellant's prior encounters with police officers where appellant either admitted to being a gang member, was involved in altercations that were gang related, or had tattoos and clothing consistent with gang membership.

Reyna Mejia testified that, in July 2003, Manuel Contreras, Rafael's brother, got in a dispute with appellant, who accused Manuel of disrespecting his house. Appellant, armed with a knife, tried to force open a door, broke a window and threatened to beat up Manuel, calling him a scrap. Appellant was arrested for vandalism based on the broken window, and police found a pocket knife and red bandana on him.

**DEFENSE**

Appellant did not testify. He called one witness, a police officer who interviewed Jose Contreras after the stabbing. The officer testified that Jose did not mention that Rafael had armed himself with a golf club when they chased the vandals. He also did not tell the officer that he saw a person with a knife while the argument occurred in the front yard. The officer said Jose told him that he "saw a young Mexican male adult with short hair who was thin in build wearing a white and gray shirt, saw this subject with the knife and described the blade as being approximately four inches long and saw him making poking motions toward Jaime [Perez]."

(Doc. 16, 17-20.)

IV.   <u>Standard of Decision and Scope of Review</u>

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the

7

> judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision. Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. at 405-06. The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]." Early v. Packer, 537 U.S. 3, 8 (2002).

A state court unreasonably applies clearly established federal

8

law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.

An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable. Williams, 529 U.S. at 410.  A state court's determination that a claim lacks merit precludes federal habeas relief as long as it is possible that fairminded jurists could disagree on the correctness of the state court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even a strong case for relief does not render the state court's conclusions unreasonable. Id.  In order to obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.  The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof. Cullen v. Pinholster, 131 S.Ct. at 1398.  Further, habeas relief is not

9

appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA. <u>Wetzel v. Lambert</u>, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen v. Pinholster</u>, 131 S.Ct. at 1398. Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1). <u>Id.</u> at 1400. Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness. A state court decision that was on the merits and was based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

The last reasoned decision must be identified in order to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1). <u>Barker v. Fleming</u>, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); <u>Bailey v. Rae</u>, 339 F.3d 1107, 1112-13 (9th Cir. 2003). Here,

the CCA's decision was the last reasoned decision in which the state court adjudicated Petitioner's claims on the merits. Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This Court will thus "look through" the unexplained decision of the California Supreme Court to the CCA's last reasoned decision as the relevant state-court determination. Id. at 803-04; Taylor v. Maddox, 366 F.3d 992, 998 n.5 (9th Cir. 2004).

V. Sufficiency of the Evidence

Petitioner argues that there was a lack of substantial evidence to establish that he possessed the requisite intent to kill because there was no evidence of threats to kill the victim or of life-threatening injuries.

A. The State Court's Decision

The pertinent portion of the decision of the CCA is as follows:

**DISCUSSION**

I.

Sufficiency of the Evidence

> On appeal, Castaneda contends that there was a lack of substantial evidence to establish that he possessed the requisite intent to kill. Specifically, appellant cites the lack of threats to kill and lack of life-threatening injuries.

11

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence-that is, evidence that is reasonable, credible, and of solid value-from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] 'This standard applies whether direct or circumstantial evidence is involved.' [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 701.)

" '[I]t is well settled that intent to kill or express malice, the mental state required to convict a defendant of attempted murder, may ... be inferred from the defendant's acts and the circumstances of the crime.' [Citation.]" (*People v. Avila, supra*, 46 Cal.4th at p. 701.)

The California Supreme Court has held that, evidence that a "defendant repeatedly attempted to stab ... an unarmed and trapped victim, and succeeded in stabbing him in the arm and leg ... alone is substantial evidence of defendant's intent to kill." (*People v. Avila, supra*, 46 Cal.4th at pp. 701-702 [internal citation omitted] (*Avila*).) The California Supreme Court also has held that, absent certain exceptions, " 'the testimony of a single witness is sufficient for the proof of any fact,'" including proof of the fact that defendant stabbed the victim. (*Id.* at p. 703.)

Finally, the California Supreme Court has held that "the degree of the resulting injury is not dispositive of defendant's intent. Indeed, a defendant may properly be convicted of attempted murder when no injury results." (*Avila, supra*, 46 Cal.4th at p. 702 [internal citation omitted].) According to the Court, "[t]he jury reasonably could infer that [the victim] avoided further injury solely because he assumed a position from which he could kick at defendant and thus protect his vital

> organs from immediate injury." (*Ibid.*)
>
> Here, there is substantial evidence in support of the attempted premeditated murder conviction. First, the requisite intent to kill can be inferred from Rafael's testimony that appellant stabbed Perez about nine times. This testimony is further bolstered by the fact that Perez suffered numerous abrasions that were the result of the stabbing, including abrasions to the back of his neck, his torso, and his hip. The evidence that appellant repeatedly attempted to stab Perez, an unarmed victim who was being trapped by other persons who had jumped him, and succeeded in doing so, is sufficient evidence of Castaneda's intent to kill. (See *Avila, supra*, 46 Cal.4th at p. 702.) Moreover, the fact that the injuries were not life-threatening does not negate a finding of intent to kill because, here, the jury could infer that Perez avoided life-threatening injuries because he assumed a position from which he could kick at appellant, and thus protect his vital organs from immediate injury. (*Ibid.*) Accordingly, we reject appellant's claim that there was a lack of substantial evidence to show that he possessed the requisite intent to kill.

(Doc. 16, 20-21.)

### B. Analysis

To determine whether a conviction violates the constitutional guarantees of due process of law because of insufficient evidence, a federal court ruling on a petition for writ of habeas corpus must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 20-21 (1979); Windham v. Merkle, 163 F.3d 1092, 1101 (9th Cir. 1998); Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

All evidence must be considered in the light that is the most

favorable to the prosecution.  Jackson, 443 U.S. at 319; Jones, 114 F.3d at 1008.  It must be recognized that it is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts; thus, it must be assumed that the trier resolved all conflicts in a manner that supports the verdict.  Jackson v. Virginia, 443 U.S. at 319; Jones, 114 F.3d at 1008.  The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991).  Circumstantial evidence and the inferences reasonably drawn therefrom can be sufficient to prove any fact and to sustain a conviction, although mere suspicion or speculation does not rise to the level of sufficient evidence.  United States v. Lennick, 18 F.3d 814, 820 (9th Cir. 1994); United States v. Stauffer, 922 F.2d 508, 514 (9th Cir. 1990); see, Jones v. Wood, 207 F.3d at 563.  The court must base its determination of the sufficiency of the evidence from a review of the record.  Jackson at 324.

The Jackson standard must be applied with reference to the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Windham, 163 F.3d at 1101.  However, the minimum amount of evidence that the Due Process Clause requires to prove an offense is purely a matter of federal law.  Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2064 (2012) (per

14

curiam). For example, under Jackson, juries have broad discretion to decide what inferences to draw and are required only to draw reasonable inferences from basic facts to ultimate facts. Id.

Further, under the AEDPA, federal courts must apply the standards of Jackson with an additional layer of deference. Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2062 (2012); Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). This Court thus asks whether the state court decision being reviewed reflected an objectively unreasonable application of the Jackson standards to the facts of the case. Coleman v. Johnson, 132 S.Ct. at 2062; Juan H. v. Allen, 408 F.3d at 1275.

The determination of the state court of last review on a question of the sufficiency of the evidence is entitled to considerable deference under 28 U.S.C. § 2254(d). Coleman v. Johnson, 132 S.Ct. at 2065.

Here, there is no dispute as to what evidence was introduced at trial. Under California law, a conviction of attempted murder requires proof of the perpetrator's intent to kill, which may be inferred from the conduct of the defendant and the circumstances of the crime. People v. Avila, 46 Cal.4th 680, 701 (2009). This Court accepts the state court's interpretation of state law. Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). However, this Court reviews the evidence to determine whether the minimum amount of evidence was introduced to infer that Petitioner had the required

intent to kill.

The state court reasoned that evidence of Petitioner's conduct, namely, repeated attempts to stab an unarmed and trapped victim and success in stabbing the victim in the arm and leg, was substantial evidence of intent to kill.  Further, the state court relied on the fact that the degree of the injury to the victim is not necessarily determinative of intent.  (Doc. 16, 20-21.)

The state court's application of the Jackson standard was not objectively unreasonable.  Viewing the evidence in the light most favorable to the prosecution, a reasonable juror could reasonably infer intent to kill from evidence that Petitioner left the scene after using a knife to stab the victim, who was trapped on his back by others and was trying by means of kicks and blows to fend off the attack, some nine times, causing loss of blood and several lacerations on the left shoulder, one on the back of the neck, and others on his torso and each middle finger.  The Petitioner repeatedly and purposefully engaged in conduct that could reasonably have been considered likely to inflict a deadly wound to critical areas of the victim's body, even in the absence of an express, verbal threat to kill.  The broken knife blade supports this inference, and the condition of the knife handle found in the house corroborated Petitioner's participation in the events.  Although it is not the only inference that could be drawn, a rational juror could conclude that the fact that the victim did not die or suffer

life-threatening wounds was a result of the success of the victim's defensive actions in protecting his vital organs and not an indication that the attacker did not intend to inflict a lethal injury. There is no legal requirement that the victim testify; rather, all that is required is that there be sufficient evidence from which a rational trier of fact could draw a reasonable inference of intent.

In summary, a rational trier of fact could conclude beyond a reasonable doubt that Petitioner acted with the intent to kill. The state court's application of the Jackson standard was not objectively unreasonable. Petitioner's claim concerning the sufficiency of the evidence will be denied.

VI. New Contentions

In the traverse, Petitioner contends for the first time that the testimony shows that the victim was attacked by more than one person; however, Petitioner is the only one accused or convicted of the most serious charge. (Trav., doc. 20, 2.) Petitioner also asserts that dismissal of the charges as a matter of double jeopardy should result from the insufficiency of the evidence. (Id.)

It is improper to raise substantively new issues or claims in a traverse, and a court may decline to consider such matters; in order to raise new issues, a petitioner must obtain leave to file an amended petition or additional statement of grounds. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994), cert. den., 514 U.S.

17

1026 (1995). Petitioner has not sought to amend the petition, and there is no showing that Petitioner exhausted his state court remedies as to the new contentions. The Court therefore declines to consider Petitioner's new contentions.

### VII. Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right or that jurists of reason would find it debatable whether the district court was correct in any procedural ruling. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the

claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  Id.  It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, the Court will decline to issue a certificate of appealability.

VIII.  Disposition

In accordance with the foregoing analysis, it is ORDERED that:

1.  The petition for writ of habeas corpus is DENIED; and

2.  The Clerk is DIRECTED to enter judgment for Respondent; and

3.  The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **July 5, 2013**                    /s/ *Barbara A. McAuliffe*
                                                UNITED STATES MAGISTRATE JUDGE